■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIGUEL VALE, Appellant.—Judgment of the Supreme Court, New York County (Eve Preminger, J.), rendered January 18, 1985, which, after a nonjury trial, convicted defendant Miguel Vale of criminal sale of a controlled substance in the third degree, and sentenced him to an indeterminate prison term of from 4½ to 9 years, reversed, on the law and the facts and as a matter of discretion in the interests of justice, the conviction is vacated and the matter remanded for a new trial.

Defendant was arrested in March 1983 for allegedly selling cocaine to an undercover officer a little over a month before. In June 1983 he was indicted for several offenses, among them criminal sale of a controlled substance in the third degree. On the day of his arraignment, defendant was admitted for inpatient psychiatric treatment at Metropolitan Hospital. In October 1983, defendant's counsel requested that his client be examined pursuant to CPL article 730 to determine whether he was fit to proceed. The request was granted and defendant was examined on two occasions by two court-appointed psychiatrists: the psychiatrists examined defendant on November 10, 1983 and again on December 18, 1983 after a 10-day hospitalization to bring his diabetes under control. Both doctors concluded that defendant was not fit to proceed. Their psychiatric

reports indicated that defendant was only partially oriented; that he was anxious, depressed, excitable and emotionally labile. His cognitive functioning was impaired by an attention deficit, and he tended to lose control and act inappropriately in response to frustration. He had difficulty remembering things and processing new information and appeared to possess only borderline intelligence. It was noted, in addition, that defendant's medical history included high blood pressure and diabetes mellitus, the latter of which was not in good control since defendant was apparently unable to regulate properly his insulin injections with his food intake. Defendant was psychiatrically diagnosed as suffering from a depressive disorder. One of the psychiatrists characterized defendant's depression as "major" and suggested that he might be a manic-depressive. Both doctors agreed that defendant should be hospitalized for medical and psychiatric stabilization.

After numerous adjournments, the court ordered a CPL article 730 hearing to be held on April 9, 1984. On that date, however, yet another adjournment was granted so that defendant could be stabilized. Defendant was accordingly admitted to Misericordia Hospital in May 1984 for treatment of his diabetes and mental illness.

In late May, defendant moved for a further CPL article 730 examination. The motion was granted and defendant was again examined on June 11, 1984.

The examination reports reflect that defendant was examined immediately after a one-month hospitalization. At that time, defendant's diabetes appeared to be under better control with twice-daily insulin injections. In addition, defendant was taking psychiatric medication. It was noted that defendant had been suicidal in the past, but was not dangerously depressed at the time of the interview. One of the examining doctors had occasion to comment that defendant had first received psychiatric treatment as a child for hyperactivity and that he had never, as a result of his attention deficit, been able to learn to read. In view of defendant's improved condition, however, and his apparent ability to comprehend the charges against him and cooperate rationally with his attorney, he was found fit to proceed.

On June 27, 1984, defendant was adjudged fit to proceed by the court and, at the request of defense counsel, rearraigned upon the June 1983 indictment, since he had been unfit at the prior arraignment in July 1983. Following entry of defendant's not guilty plea, it was agreed that defense motions

would be completed by July 16, 1984. The Assistant District Attorney handling the matter, however, apparently went on vacation and the time for pretrial motions was extended until August 21, 1984. On August 20, 1984, defendant's counsel moved upon several grounds for dismissal of the indictment and, alternatively, requested authorization to hire a psychiatrist to assist in developing an insanity defense. Counsel at the same time notified the prosecutor pursuant to CPL 250.10 of his intention to offer psychiatric evidence in support of an insanity defense.

Defendant's motion was denied in piecemeal fashion; the request for a court authorization to hire a psychiatrist was not disposed of until October 23, 1984. At that time, Justice Berkman denied the application, noting in the margin of the motion papers that the request was untimely and that "the defense has failed to set forth any grounds for believing that such a defense might succeed."

Although defendant attempted to establish an insanity defense at trial by subpoenaing one of the doctors who had examined him in connection with the CPL article 730 proceedings, and by calling a doctor who had treated him during hospitalizations in 1982 and 1983, neither doctor had any opinion as to what defendant's condition had been on the occasion of the offense for which he was being tried. Defendant was found guilty, and reluctantly sentenced by the trial court to the mandatory minimum prison term of from 4½ to 9 years. The court expressed the hope that defendant would be released at the earliest possible parole date and that he would be sent to an institution where he would receive appropriate psychiatric help.

In our view, Justice Berkman's denial of defendant's application for authorization to hire a psychiatric expert to help in the preparation of an insanity defense was most improvident.

The United States Supreme Court has held in *Ake v Oklahoma* (470 US 68) that when a State undertakes to prosecute an indigent defendant, it must also take whatever measures are necessary to assure that the defendant is able to participate meaningfully in the proceeding. The proceeding will otherwise be fundamentally unfair and offensive to the due process guarantees of the Fourteenth Amendment *(supra,* at 76). The right specifically at issue in *Ake* was that of an indigent defendant to obtain access to expert psychiatric assistance to aid in the preparation and presentation of an insanity defense. The court held that the State must provide an indigent defendant access to expert psychiatric assistance

where the defendant demonstrates to the trial court that his sanity, at the time of the offense, is to be a significant factor at trial. *(Supra,* at 83.)

Thus, contrary to the opinion of the motion court herein, an indigent need not show that an insanity defense "might succeed" to obtain access to expert psychiatric assistance, but only that the issue of the defendant's sanity will be an important factor at trial.

In *Ake (supra),* the circumstances held to require that the defendant be afforded access to a psychiatric expert were very similar to those in the present matter. In *Ake,* as here, the trial court was on notice that the defendant would rely on an insanity defense. While there was no specific proof before the trial court in *Ake* that the defendant was insane when the offense was committed, there was evidence that the defendant was initially incompetent to stand trial; that he was only rendered competent after being treated with large doses of psychiatric medication; and that his mental illness might have begun many years before the offense charged. Similarly, here, the motion court was aware that the defendant was initially unfit to stand trial; that he was only found fit immediately after an extended hospitalization during which he received intensive treatment for his psychiatric problems and various serious physical ailments; and that defendant had an extensive history of institutional care, including five hospitalizations within the two-year period preceding his trial, and a record of psychiatric difficulties dating back to childhood. It was, moreover, evident that defendant was a person of limited intelligence who had repeatedly proven unable to deal effectively on his own with his mental and physical problems; he deteriorated quickly when released from institutional care. We think that upon this showing, defendant was entitled to access to a psychiatric expert to aid in preparation of an insanity defense.

While defendant's notice to the District Attorney of his intention to present psychiatric evidence may not have been within the 30-day time period set forth in CPL 250.10 (2), it did come within the period apparently agreed upon by the parties for submission of pretrial motions. Certainly, the People were not in any way prejudiced by the late notice and did not object to the application on that ground. Indeed, they *did* not object on that ground to the subsequent introduction by defendant of psychiatric testimony at trial. The motion court's denial of the application on the ground of untimeliness is all the more troublesome since the application was not

disposed of for some two months after it had been made. That the court did not rule upon the application until three days before the trial was set to begin was not the fault of defendant or his counsel.

The effect of the motion court's denial of the indigent defendant's application for authorization to hire a psychiatrist was that defendant was forced to go to trial without any opportunity to prepare an insanity defense. Possibly, defendant's chances of prevailing based on such a defense were minimal, but that was not the issue before the court on the application. Although perhaps unpromising, a mental defect defense was defendant's best line of defense; and whether defendant had been sane at the time of the offense was a question legitimately raised by the record before the court.

Deprived of all realistic opportunity to defend himself effectively, defendant was found guilty and sentenced to a minimum, but nevertheless stiff, mandatory prison term. A man whom everyone involved understood to have serious and long-standing psychiatric problems was thus packed off to prison where he presently remains, with nothing but the hollow, if well-intentioned, hope expressed by the trial court that he would be sent to an institution where he would receive appropriate psychiatric care. The defendant was entitled to more. Clearly, in the interests of justice and fundamental fairness, he should have been permitted access to the expert psychiatric assistance he needed in order to present an adequate defense. Certainly, the notice provisions of CPL 250.10 (2) in no way dictated the due process deprivation which occurred in this case as a result of the motion court's improvident ruling. Concur—Murphy, P. J., Ross, Milonas and Smith, JJ.

Kupferman, J., concurs in part and dissents in part in a memorandum as follows: I would hold this matter in abeyance and remand for a hearing on whether the defendant knew what he was doing or whether he knew what he was doing was wrong. (See, general discussion in McQuillan, *Insanity as Affirmative Defense—A Proposed Standard in New York,* NYLJ, June 22, 1987, at 1, col 3.)

The new formulation with burden of proof on the defendant postdates this offense. (Penal Law § 40.15.) Nonetheless, he should be afforded a full opportunity to raise the insanity situation. Therefore, I concur with the majority on the issue of timeliness. However, it appears to me that Justice Berkman was correct in stating that it was doubtful "that such a defense might succeed" anymore than it did.

What opinion could we get that is any more relevant to 1983 than that of the physician who treated him in 1982 and 1983 as to what the defendant's condition was at the time of the offense? So, before we vacate the conviction in a *nonjury trial,* let us have a hearing held to see what relevant testimony a court-appointed psychiatrist can honestly give.