**James TYSON, Petitioner–Appellant,**

v.

**John P. KEANE, Superintendent, Sing Sing Correctional Facility, Respondent–Appellee.**

No. 98–2144.

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1998.

Decided Oct. 20, 1998.

Jeffrey I. Richman, New York City (Daniel L. Greenberg, of Counsel), for Petitioner–Appellant.

Christina A. Baiata, Bronx, NY, Assistant District Attorney, Bronx County (Robert T. Johnson, District Attorney, Bronx County, Joseph N. Ferdenzi, Allen H. Saperstein, Assistant District Attorneys, of Counsel), for Respondent–Appellee.

Before: FEINBERG and JACOBS, Circuit Judges, and POLLACK, District Judge.[*]

FEINBERG, Circuit Judge:

Petitioner James Tyson appeals from a judgment of the United States District Court for the Southern District of New York, Shira A. Scheindlin, J., denying his petition for a writ of habeas corpus. The district court found that Tyson's constitutional claims were not procedurally barred, but that any error by the state trial court was harmless. *Tyson v. Keane*, 991 F.Supp. 314, 319 (S.D.N.Y. 1998). For the reasons set forth below, we affirm.

## I. Background

### A. State Court Proceedings

In July 1992, petitioner Tyson was convicted of rape in the first degree after a jury trial in the Supreme Court of New York, Bronx County (Ira Globerman, J.) and was sentenced to an indeterminate term of imprisonment of 10–20 years. Before trial, Tyson's counsel was informed that the prosecution had obtained an audiotape made by the complainant of a telephone conversation she had with the accused shortly after the alleged rape. During this conversation, the male speaker, who identified himself as "Tyson," seemed to admit that he had committed rape. Counsel played the tape for his client, who denied that the voice on the tape was his. Thereafter, Tyson's attorney asked the trial court to provide the defense with funds to hire an expert in voice spectrography to determine whether the voice on the tape was in fact Tyson's. The court denied the request.

Since the accused and the complainant knew each other, the chief issue at trial was whether the complainant was raped or engaged in consensual sex. The prosecution focused on the complainant's behavior following the incident, which strongly suggested she was raped. After the alleged rape, the complainant went directly to a girl friend's apartment, where she became very upset. Her friend testified that she called the police and then took the complainant to the hospital. A rape kit was introduced that showed evidence of sexual activity with Tyson. A detective testified about her interview with the complainant at the hospital. Another detective testified about the arrest and reported two incriminating comments by Ty-

---

[*] Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

son: When arrested, Tyson initially denied knowing the complainant, which was untrue. Later, while being fingerprinted, Tyson allegedly said that he had not had sex in four months and that the complainant was "big and beautiful and I took it."

During the complainant's testimony, the prosecution introduced the tape recording, which included the following: [1]

Comp: Why do you feel so bad?

Tyson: Leave it alone. I don't.

Comp: I know why you feel bad.

Tyson: Why?

Comp: Because I'm your friend and you raped me. That's why you feel bad.

Tyson: What'd you say?

Comp: I said because I'm your friend and you raped me. That's why you feel bad.

Tyson: That I . . .

Comp: I knew you didn't mean to do it, but that's what you did. That's why you feel bad, right?

Tyson: Yeah.

Comp: I don't know, you just, I don't know, you just lost it. You just . . .

Tyson: Huh?

Comp: I don't know you just totally lost it. You never did that be, before? You never went off like that before?

Tyson: No.

Comp: So why would you rape me, me of all people?

Tyson: I didn't mean to rape you, ——.

Comp: But you did.

Tyson: I didn't mean to.

In his defense, Tyson testified that he had consensual sex with the victim and that the voice on the tape recording was that of some other man. Tyson had also been charged with sodomy and sexual abuse in the first degree, but the jury returned a verdict of guilty only on the count of first degree rape.

Tyson appealed his conviction to the Appellate Division, First Department, claiming that his rights to due process, equal protection and effective assistance of counsel were violated by the trial court's refusal before trial to fund an expert in voice spectrography in support of his defense. Tyson requested a new trial. In November 1994, the Appellate Division held that the trial court had abused its discretion in denying Tyson's request for funding to test whether it was his voice on the tape. *People v. Tyson*, 209 A.D.2d 354, 355, 618 N.Y.S.2d 796 (1994). However, rather than granting Tyson's request for a new trial, the Appellate Division held the appeal "in abeyance," granted Tyson's application for funds to retain an independent spectrographic expert to conduct voice identification analysis, and remanded the matter for a preliminary hearing to determine the admissibility of voice spectrography evidence, in the event that the expert reached an exculpatory result.

Thereafter, the tape was analyzed by an expert, who determined that the voice on the tape was Tyson's. However, in applying "linguistic discourse analysis" to the conversation, the expert also concluded that the manner in which the victim carried on the conversation allegedly prompted Tyson to make certain admissions. Specifically, the expert found that Tyson was a stutterer, who was "speech-disabled" and a "low assertive, high responsive" individual incapable of offering denials, objections or explanations to the victim's accusations. By contrast, the expert found that the victim "harbor[ed] anger" and dominated the conversation, thereby "reconstructing" consensual sexual intercourse as a rape. The expert further determined that the victim's "suggestion of friendship . . . interspersed with . . . hostile statements," was inconsistent with her claim of having been raped. Based on "linguistic discourse analysis," the expert concluded that Tyson's admissions were not probative of his guilt.

In February 1996, the trial judge held a preliminary hearing at which defense counsel reported the expert's inculpatory results. However, counsel argued, among other

---

1. The complainant is identified as "Comp."

things, that Tyson had been denied effective assistance of counsel at trial because of the judge's initial failure to fund an expert. Counsel also argued that the appointment of an expert after conviction did not suffice to remedy the constitutional violations. He therefore requested a new trial. The trial judge denied the request. Thereafter, Tyson again urged the Appellate Division to grant him a new trial. In May 1996, the Appellate Division unanimously affirmed the conviction. *People v. Tyson*, 227 A.D.2d 322, 643 N.Y.S.2d 537 (1996). Tyson sought leave to appeal to the New York Court of Appeals, but permission was denied. *People v. Tyson*, 88 N.Y.2d 996, 649 N.Y.S.2d 403, 672 N.E.2d 629 (1996).

### B. Federal Court Proceedings

In September 1996, Tyson sought a writ of habeas corpus from the federal district court on two grounds: (1) the trial court violated his constitutional rights to due process, equal protection and effective assistance of counsel by denying him before trial the funds for a voice expert; and (2) reversal of his conviction and remand for a new trial was the proper remedy for the court's failure to appoint an expert. Judge Scheindlin granted Tyson's application for appointment of counsel, and appointed the attorney who had represented him in the state court post-conviction proceedings. The matter was then referred to United States Magistrate Judge Andrew J. Peck. The Magistrate recommended that the district court deny the habeas petition. See *Tyson v. Keane*, 991 F.Supp. at 319–29. The Magistrate agreed that the state trial court had erred in denying funding for the expert, but concluded that the error was harmless.

Both Tyson and the prosecutor (hereafter called the state) filed objections to the Magistrate's Report; the state urged, among other things, that Tyson's constitutional claims were procedurally barred. In January 1998, District Judge Scheindlin adopted what she properly characterized as the "thoughtful and thorough" Magistrate's Report, held that Tyson's claims were not procedurally barred and denied Tyson's application for a writ of habeas corpus on the ground that the initial failure to appoint an expert was harmless error. *Tyson v. Keane*, 991 F.Supp. at 319. This appeal followed.

## II. Discussion

### A. Procedural Issue

■■■ The state argues that Tyson's claims that he was denied due process, equal protection of the law and the right to effective counsel are procedurally barred because they are not exhausted. Before addressing the merits of a petition for habeas corpus, the federal courts must insure that the petitioner has exhausted his remedies in the state courts. *Rose v. Lundy*, 455 U.S. 509, 515, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Exhaustion requires presenting a federal claim to the highest court of the state. *Grey v. Hoke*, 933 F.2d 117, 119–20 (2d Cir.1991). The state argues that Tyson's claims referred to above are not exhausted because in his application for leave to appeal to the New York Court of Appeals he did not allege that the trial court's failure to fund an expert violated those constitutional rights.

We agree with Judge Scheindlin's conclusion that the state's procedural argument is without merit. *Tyson v. Keane*, 991 F.Supp. at 317. It is clear that Tyson raised his denial of effective counsel claim in his letter request for leave to appeal to the Court of Appeals. The letter focuses on what would later be Tyson's second ground in his habeas petition: the adequacy of the Appellate Division's remedy for the trial court's error. However, the second paragraph of the letter states Tyson's claim that he received ineffective assistance of counsel because of the error, and the letter concludes with the same argument. Therefore, the state's argument that Tyson's constitutional claims are procedurally barred must be limited to the other two grounds raised in the first part of the habeas petition: that his rights to due process and equal protection were violated by the trial court's failure to appoint an expert. We agree with the district judge that the Appellate Division's order appointing an expert excused Tyson from any further appeal in the state courts on those points, as Tyson "could hardly be expected to appeal from a decision in his favor." *Id.*

## B. Denial of Effective Assistance of Counsel[2]

■ Tyson strenuously argues that failure to appoint an expert before trial denied him the effective assistance of counsel. To prevail on this sort of claim, a defendant must show both that his attorney was objectively deficient and that the deficiency prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Tyson argues that the trial court's refusal before trial to appoint an expert rendered his attorney ineffective by preventing him from discovering that Tyson actually was the speaker on the tape. His attorney, therefore, allowed Tyson to take the stand and deny that his was the voice on the tape, thus pursuing a fruitless avenue of defense that would have been rejected had the attorney known the truth. Tyson argues that had the trial court appointed the expert when first asked to do so—as it should have—the defense strategy would have been entirely different: to keep defendant off the stand and argue, based upon the expert's "linguistic discourse" findings, that defendant did *not* admit that he had raped the victim. Apparently we are meant to infer that the outcome of the trial might then have been different.

Tyson thus is not making the customary claim of inadequate counsel. Tyson does not argue that his counsel's investigation of the case was deficient. Indeed, his counsel vigorously sought appointment of the voice expert to prove that the voice on the tape was not Tyson's. At trial, counsel effectively examined Tyson on direct and highlighted inconsistencies in the state's case through cross-examination of prosecution witnesses.

The claim of ineffectiveness is based only on the *trial judge's* failure to appoint a voice expert before trial. The argument is that this forced counsel to adopt a defense that was doomed and denied him the chance to keep Tyson off the stand and argue that his statements on the tape should not be taken at face value.

■ The claim that, on this record, Tyson's constitutional right to effective counsel was violated is weak. First, the expert's report and the jury's verdict establish that it was Tyson's voice on the tape. Tyson certainly knew that and remembered the conversation, which took place shortly after the rape. If Tyson had simply informed counsel before trial of that fact there would have been a reassessment of the defense. The principal reason why the "wrong" defense strategy was pursued at trial was not the trial judge's error but Tyson's own conduct, whether characterized charitably as lack of candor or as a lie. Moreover, the "linguistic discourse analysis"—whatever its merit or lack thereof[3]—was an obvious afterthought. The request for the expert was based on an entirely different theory and would not have been made at all if Tyson had informed his counsel of the true facts.

Second, even if Tyson's attorney had received the expert's report before trial, rather than after, the basic defense would have remained that the sex was consensual. Only the approach to the tape would have changed. As already indicated, instead of arguing that Tyson was not the speaker, the defense would have been that Tyson's statements should not be taken at face value. Even without the benefit of an expert, as the

---

**2.** While Tyson continues to press his claim that his rights to due process and equal protection were also violated, we believe that at this point these claims do not add anything to the argument or require separate analysis.

**3.** The state argues that even if Tyson had received the expert's report before trial, the testimony on "linguistic discourse analysis" would not have been admissible. Although New York law is apparently silent on the admissibility of this type of analysis, the federal courts have generally refused to admit "linguistic discourse analysis." *United States v. Kupau*, 781 F.2d 740, 745 (9th Cir.1986), cert. denied, 479 U.S. 823,

107 S.Ct. 93, 93 L.Ed.2d 45 (1986); *United States v. Schmidt*, 711 F.2d 595, 598–99 (5th Cir.1983), cert. denied, 464 U.S. 1041, 104 S.Ct. 705, 79 L.Ed.2d 169 (1984). Further, New York would most likely exclude the evidence, given that the admissibility of voice spectrography itself remains unsettled in New York. *People v. Jeter*, 80 N.Y.2d 818, 820–21, 587 N.Y.S.2d 583, 600 N.E.2d 214 (1992). Tyson responds that admissibility is not the issue, since the expert testimony would not have been necessary. The defense attorney could have made the argument himself to the jury. Indeed he could have, as we point out below.

district court noted in its opinion, the defense could have made the argument that the victim dominated the conversation and put words in Tyson's mouth. *Tyson v. Keane*, 991 F.Supp. at 318–19.

In support of his argument that his counsel was rendered ineffective, Tyson cites *Johnson v. Baldwin*, 114 F.3d 835 (9th Cir.1997). In that case, the defendant testified at his state court trial for rape that he was not at the scene of the crime. The state appellate court concluded that his testimony was "incredibly lame" and that he had lied. *Id.* at 838–39. After defendant brought a habeas petition, the Ninth Circuit held that because the defendant's false testimony was due to defense counsel's ineffectiveness in failing to investigate defendant's claims and confront him about their falsity, defendant was entitled to a new trial. Even assuming that *Johnson* is sound law, however, the failure of *Johnson's* counsel to realize that the defendant's alibi was a lie was merely one piece of evidence of counsel's overall ineffectiveness. Johnson's defense attorney failed to perform any pretrial investigation or interview possible alibi defense witnesses, falling far short of the minimal competency standards set by the Sixth Amendment. Indeed, the prosecution in *Johnson* did not challenge the district court's finding that defense counsel's performance fell short of Sixth Amendment requirements. In addition, the case against defendant Johnson was "extremely weak." *Id.* No physical evidence of sexual intercourse of any kind was ever found, *id.* at 836, and the other young man accused of the same crime was acquitted. *Id.* at 840.

This case is entirely different. There is no claim that defense counsel's inadequate investigation led him to believe Tyson's story. Moreover, the prosecution's case was not weak. The circumstances surrounding the alleged assault and the victim's behavior thereafter were consistent with a rape. The jury would hear the tape in any event, and since it really is Tyson's voice on the tape, we have no doubt at all that the result at a new trial would be the same.

In sum, we cannot find that any deficiency in representation due to the trial court's error in refusing to appoint an expert can be properly characterized as a violation of Tyson's constitutional right to effective counsel.

C. The Appellate Division's Remedy

■ Tyson apparently also argues that the appointment of an expert after trial and remand for a hearing is not constitutionally sufficient as a remedy for the denial of access to the expert before trial. Tyson appears to claim that federal precedent dictates that only a new trial here can cure the trial court's abuse of discretion. Tyson relies heavily on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) and *United States v. Durant*, 545 F.2d 823 (2d Cir.1976). In *Ake*, the defendant was accused of "murdering a couple and wounding their two children." 470 U.S. at 70, 105 S.Ct. 1087. His attorney informed the state trial court that he planned to pursue an insanity defense and requested funding to pay for a psychiatrist, since Ake was indigent. The request was denied and Ake was found guilty of murder and sentenced to death. On appeal, the Supreme Court found that the denial of expert assistance violated Ake's constitutional rights. *Id.* at 74, 105 S.Ct. 1087. The Court reversed the conviction and remanded.

In *Durant*, this court heard a direct appeal from defendant's conviction for bank robbery. Because the government planned to use fingerprint evidence, Durant's attorney requested appointment before trial of an independent fingerprint expert to examine the prints and assist in the defense. The trial court denied the request. On appeal, this court reversed the conviction and remanded, finding that the trial court's denial was based on a misinterpretation of the Criminal Justice Act of 1964. *Durant*, 545 F.2d at 829.

Although both cases involved trial court error in denying indigents access to experts, and both remedied the error with reversal and remand, neither suggests that Tyson should receive the same remedy for the error made at his trial. First, neither Ake nor Durant was competent to assist their attorneys in determining whether, in Ake's case, he was legally insane at the time of the crime, or in Durant's case, the print offered by the government actually came from his finger. Even if Ake was personally con-

738

vinced that he was sane at the time he committed murder, he still could have been judged insane by a psychiatrist. Similarly, even if Durant knew that he was in the bank and committed the robbery, an expert might have found that the fingerprint did not match Durant's prints, or that the fingerprint was too poor to make an accurate identification. These two defendants could not assist their attorneys in these aspects of their defenses; only an expert could have resolved these issues. Tyson, however, knew exactly what the expert later told Tyson's attorney: that the voice on the tape was Tyson's. Even if he did not recognize his own voice on tape, he certainly recognized the substance of the conversation. No expert was necessary for Tyson and his attorney to formulate a defense. Tyson's honesty would have fully substituted for expert analysis.

■ Further, *Ake* and *Durant* are distinguishable because of the type of expert assistance requested. Ake asked for a psychiatrist; Durant for a fingerprint analyst. These types of experts offer information and analysis that a non-expert cannot provide. Although the jury remains the ultimate judge of sanity, without expert assistance "the risk of an inaccurate resolution of sanity issues is extremely high." *Ake*, 470 U.S. at 82, 105 S.Ct. 1087. Similarly, a jury cannot discern whether a fingerprint from the scene matches defendant's prints without expert assistance. Voice identification, however, does not depend on specialized expertise. Juries may listen to an audiotape of a voice and determine who is speaking even though the voice has been authenticated only by a lay witness rather than an expert. 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence ¶ 901.07 (Joseph M. McLaughlin ed., 2d ed.1998); *Ricketts v. City of Hartford*, 74 F.3d 1397, 1409–11 (2d Cir. 1996); *United States v. Sliker*, 751 F.2d 477, 496–500 (2d Cir.1984).

Moreover, whether in the federal courts reversal and remand is the usual remedy for denial of an expert to an indigent is not controlling here. Since this issue comes before us on a habeas petition, we would reverse and remand for a new trial only if we found the state court's chosen remedy so inadequate that it amounted to a violation of defendant's constitutional rights. The case

here does not meet that high threshold. We do not believe that the federal Constitution requires that the remedy for denial of access to an expert must always be reversal and remand for a new trial.

The Appellate Division recognized, on the initial appeal to it, that failure to appoint an expert for Tyson's defense might have severely compromised his ability to attack the complainant's credibility. That court chose to appoint the expert and remand for a hearing on the admissibility of the expert's testimony, if it was exculpatory. We can only assume that, if the expert had concluded that the voice on the tape was not that of Tyson, and if the trial court had determined that the expert's testimony was sufficiently reliable to allow it to be admitted before a jury, then the Appellate Division would have reversed Tyson's conviction and remanded for a new trial. However, since the expert in fact identified the voice as Tyson's, the pretrial denial of an expert did not warrant a new trial for Tyson.

We see no persuasive reason to hold that, as a matter of federal constitutional law, the Appellate Division could not use this kind of remedy for Tyson's deprivation of expert assistance. Indeed, in *Durant* we discussed the possibility of doing the same thing. Although we decided not to, we noted that:

> It may be that such expert advice will prove to be of little or no assistance, but on this record we can hardly say that. Furthermore, even if the new trial ultimately proves wasteful because an appointed expert does not help the defense, none of the blame for the waste will rest with the defendant.

545 F.2d at 829. In this case, of course, it is already entirely clear that the expert's report was "of little or no assistance" to the defense, and the "blame" for the potential "waste" of ordering a new trial would rest in substantial part on Tyson himself.

On this record, post-conviction appointment of an expert, in light of the expert's inculpatory findings, did not violate Tyson's constitutional rights. The trial court's error here has been judged to be harmless, *Tyson v. Keane*, 991 F.Supp. 314 (S.D.N.Y.1998) (district court opinion); *Tyson v. Keane*, 991 F.Supp. 314, 319–29 (S.D.N.Y.1998) (Magistrate's Report and Recommendation); *People*

*v. Tyson,* 227 A.D.2d 322, 643 N.Y.S.2d 537 (1996) (denying motion for new trial), and we agree with that view. There is no reason to conclude that a harmless error must be remedied by a new trial. See *Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ("We reject[ ] the argument that the Constitution requires a blanket rule of automatic reversal in the case of constitutional error . . . .").

Tyson also argues that New York State precedent dictates that a new trial is the proper remedy for erroneous denial of an expert. In support of this proposition, Tyson cites many state cases, e.g., *People v. Burts,* 78 N.Y.2d 20, 571 N.Y.S.2d 418, 574 N.E.2d 1024 (1991); *People v. Jones,* 210 A.D.2d 904, 620 N.Y.S.2d 656 (1994); *People v. Vale,* 133 A.D.2d 297, 519 N.Y.S.2d 4 (1987). We agree that the cases cited ended with reversal and remand, but the issue before us is not whether, as a matter of state law, the state court should have ordered a new trial. It is whether the failure of the state court to do so violated Tyson's federal constitutional rights. We conclude that, on this record, it did not.

In sum, for the reasons given above, Tyson's arguments, all of which we have considered, do not warrant reversal of the district court. The judgment of the district court is affirmed.