**Albert JOHNSON, Petitioner–Appellant,**

v.

**George H. BALDWIN, Superintendent of Eastern Oregon Correctional Institute, Respondent–Appellee.**

**No. 96–35049.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1996.

Decided May 23, 1997.

Christopher J. Schatz, Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

David B. Thompson, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

Before: CANBY, RYMER and KLEINFELD, Circuit Judges.

**OPINION**

CANBY, Circuit Judge.

Albert Johnson appeals a district court order denying his petition for a writ of habeas corpus. Albert and his brother Kevin Johnson were charged together by an Oregon grand jury with rape and sodomy, but were tried separately. Albert was convicted of three counts of rape in the first degree. After exhausting state remedies, he brought this habeas corpus petition in federal district court, claiming ineffective assistance of counsel at trial. The claim is unusual, because one aspect of the alleged ineffectiveness was the failure of counsel to investigate and discredit Albert's unconvincing denial that he was present at the scene of the alleged crime. With proper investigation and advice by his counsel, Albert asserts, he would have presented a more convincing defense: that he was present at the scene of the alleged crime but that no rape occurred. Alternatively, he might have elected not to testify at all.

The district court agreed that counsel's performance had been objectively deficient, but held that Albert was not prejudiced by his attorney's objectively deficient performance. Albert appeals, contending that he was prejudiced. We find merit in his contention, and reverse with instructions that the writ be issued unless the State elects to retry him within a reasonable time.

## BACKGROUND

The grand jury charged that the Johnson brothers had raped and sodomized seventeen-year-old Sharlene Wilson the night of October 6, 1985, at Kevin's residence. Kevin had previously been romantically involved with Wilson.

Albert was tried first.[1] At his trial, Wilson testified that, at Kevin's invitation, she had gone to Kevin's residence on the night in question. When she arrived, Kevin introduced her to a man whom he described as his brother, "Priest"; Wilson later identified "Priest" as the defendant. Shortly after the introduction, the three went to several stores to buy alcoholic beverages before they found one that would accept Kevin's or Priest's identification. They then returned to Kevin's residence and, at Priest's suggestion, she and Priest smoked a marijuana cigarette. Wilson testified that she became "high," that Kevin's face became "three-dimensional" to her, and that she hallucinated twice, either before or during the rape. When she decided to leave, Priest forced her down on a bed and Kevin and Priest forcibly undressed her. Then, according to Wilson, Priest raped her vaginally, after which Kevin did the same, and then Priest did it again. After that, Kevin forced her to copulate him orally, while Priest for the third time penetrated her vagina.

Wilson, in a distraught state, called a girl friend and met her, saying that she had been raped. Eventually Wilson's parents and the police were summoned. Within four hours after the alleged rapes, before she had washed in any manner or changed clothes, Wilson was examined at a hospital. Examiners found no physical evidence of intercourse; there were no traces of sperm or semen found in her vagina or, later, in her underwear or the bedspread upon which the alleged rape occurred.

Albert testified very briefly. He testified that the house where Kevin lived and the rape was alleged to have occurred belonged to his father. Albert stated that he did not live there, but at the time was living with his girl friend and also his grandmother. His testimony regarding the alleged rape is contained in the following exchange:

Q. Were you there?

A. No, I was not.

Q. Were you called Priest?

A. No, sir.

Albert also testified that he had never seen Wilson until he attended a dance with his brother about a week after the alleged rape, when he saw someone who looked like her.

Albert was not cross-examined at all regarding his denial, or his whereabouts on the night in question. His cross-examination, as well as much of his direct examination, related to his forgery and theft convictions, and his four separate convictions for failing to appear.

In final argument, Albert's attorney argued both that no rape occurred and that, if one occurred, it had been done by Kevin and a man named Priest, who was not the defendant. He pointed out that, although Wilson had testified that Kevin introduced Priest as his brother, the police testimony and reports do not reflect that Wilson so identified him to the police at the time. It was nearly a month after the crime, after some unsuccessful searching, when the police were informed that the suspect might be Kevin's brother.

The jury then convicted Albert of all three counts of rape. At sentencing, Albert admitted he had been present at the alleged time and place, but insisted that no rape had occurred. He also stated that his attorney had told him to say he was not there. The court sentenced Albert to twenty years in

---

1. Kevin was a fugitive at the time of Albert's trial. Represented by different counsel, Kevin was later tried and acquitted.

prison. He appealed his convictions. The Oregon Court of Appeals affirmed without opinion, *State v. Johnson*, 82 Or.App. 551, 728 P.2d 977 (1986), and the Oregon Supreme Court denied review. *State v. Johnson*, 302 Or. 461, 730 P.2d 1251 (1986).

Albert then filed a petition for post-conviction relief in the Circuit Court of the State of Oregon for the County of Marion. In his petition, Albert alleged that his attorney, Charles Haslett, Jr., had failed to represent him adequately because, among other things, he had not adequately investigated the case, he had not adequately conferred with Albert, he had not adequately investigated petitioner's alibi defense, and he had encouraged Albert to testify falsely that he was not present at the scene.

The court held an evidentiary hearing. Albert testified that he was present at Kevin's home the night of the alleged rape, and that he testified falsely at trial only because Haslett directed him to do so. Haslett testified, however, that he had never encouraged Albert to commit perjury. He stated that Albert had told him prior to trial that he was not at Kevin's house when Wilson was allegedly raped, but was staying with either his grandmother or his girlfriend at the time. Haslett also testified that the main defense he presented in the case was the absence of medical proof of sexual intercourse, not alibi.

The post-conviction trial court found, *inter alia*, that Haslett had met twice with Albert: once just prior to the pretrial conference a month before trial, and once in a weekend recess during the trial. Haslett had talked to no more than two witnesses prior to trial, the nurse or doctor who examined the victim or both. He had talked to the victim only in the presence of the prosecutor. Haslett did not talk to Albert's grandmother or girlfriend. With regard to the question whether Haslett had encouraged Albert to testify falsely, the court stated:

> At best petitioner said attorney Haslett told him to lie and Haslett said he did not tell petitioner to lie. Such evidence by petitioner does not establish proof to the court's satisfaction and the court finds petitioner failed to sustain his burden of proof that attorney Haslett encouraged and told him to testify falsely at trial.

The court then concluded that Albert had been denied the effective assistance of counsel. "Counsel failed to adequately and sufficiently confer with petitioner about petitioner's case and counsel's preparation, and counsel failed to adequately investigate and present the alibi defense at trial." The court accordingly ordered a new trial.

The State appealed, and the Oregon Court of Appeals reversed the decision of the trial court on the ground that Albert had not been prejudiced by Haslett's actions. *Johnson v. Maass*, 99 Or.App. 693, 784 P.2d 107 (1989), *rev. denied*, 309 Or. 521, 789 P.2d 1386 (1990). The Court of Appeals concluded that Albert's "defense of alibi, however presented, was based on false information that [he] gave his attorney. We will not rest post-conviction relief on those circumstances." *Id.* 784 P.2d at 109. With respect to Albert's contention that better investigation would have led to an abandonment of the false testimony and produced a more effective defense, the court stated that Albert did not "suggest a defense that could have been developed that would likely have changed the result of the criminal trial." *Id.*

Albert then filed a petition for writ of habeas corpus in the United States District Court for the District of Oregon. The petition alleged, *inter alia*, that he received ineffective assistance of counsel at trial. Albert also moved for an evidentiary hearing concerning whether Haslett had directed him to testify falsely at trial. The district court dismissed the petition, agreeing with the state post-conviction court that Haslett's representation of Albert was objectively deficient, but holding that Albert failed to show that he was prejudiced by any of Haslett's trial errors.

This appeal followed.

## ANALYSIS

In order to prevail on his claim of ineffective assistance of counsel, Albert must show (1) that his counsel's performance, viewed objectively, was outside "the wide range of professionally competent assistance," and (2)

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

The State does not challenge the district court's finding that Haslett's performance at trial fell outside "the wide range of professionally competent assistance" that the Sixth Amendment requires. The district court stated that it agreed with the state post-conviction trial court's conclusion to that effect. The district court was not convinced, however, that Haslett's deficient performance prejudiced Albert's defense. Citing the second prong of the *Strickland* test, the district court, like the Oregon Court of Appeals, concluded that Albert's habeas petition "failed to demonstrate how a more thorough investigation of his defense of alibi would have led to a different outcome." The district court therefore denied the petition.

We review *de novo* Albert's claim that he received ineffective assistance of counsel. *See Crotts v. Smith*, 73 F.3d 861, 864 (9th Cir.1996). The sole issue in this appeal, then, is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. We conclude that there is.

**A. The State's case.**

The State's case against Albert was extremely weak. We have previously held that "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir.1986). Here, the only evidence presented at trial that indicated Albert had raped Wilson came from Wilson herself, who testified that Albert and his brother Kevin forcibly raped her three times over the course of forty-five minutes, with Kevin ejaculating into her mouth. An investigating officer testified that Wilson had told him that both Albert and Kevin had reached sexual climaxes.

The physical evidence utterly failed to support Wilson's account. The prosecution presented the testimony of Evelyn Medrano, the emergency-room physician who conducted a physical examination of Wilson at 5 a.m. on October 7. Wilson told Dr. Medrano that she had not douched, bathed, or changed clothes between the time of the alleged rape and the examination. Dr. Medrano testified that she found "no ejaculatory material inside [Wilson's] vagina." Indeed, Dr. Medrano admitted on cross-examination that she "did not find anything that would have indicated" that a penis had recently entered Wilson's vagina.

Dr. Medrano's conclusions are supported by the testimony of Charles Shawan, a criminalist at the Oregon police laboratory to which the sexual assault kit prepared by Dr. Medrano was sent. Called by the defense, Shawan testified that he "was unable to find sperm cells on the microscopic slides, and ... could not determine the presence of semen on the vaginal swab, cervical swab, or panties, and there were no apparent hairs of relevancy present in the pubic combing." Shawan also testified that if, as in this case, "there were two normal ejaculations of semen and an individual was tested for these substances or examined for them within four hours, I would find it likely that I would find evidence of that intercourse by finding evidence of seminal fluid." Finally, Shawan testified that there were no traces of sperm or semen found on the bedspread upon which the alleged rape occurred.

The State's case was thus weak. The potential prejudicial effect of counsel's deficient performance must be evaluated in light of that fact.

**B. Albert's defense.**

Albert's denial that he was at the scene of the alleged crime was incredibly lame. He did not state where he was, or elaborate in any other way. His denial was so ineffective that it stimulated no cross-examination on its merits. Most of his testimony, on direct and cross-examination, was concerned with his

prior convictions. The jury obviously concluded that he was not telling the truth when he denied that he was present at the scene. Because of the precariousness of the prosecution's case, there is a "reasonable probability" that, if Albert had not taken the stand and lied, the outcome of the trial would have been different. *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065–66.

We do not agree with the State's contention that Albert's false testimony could not have prejudiced him because Albert's absence from the scene was not central to his defense. His primary defense, according to the State, was that no rape had occurred, and Haslett so argued to the jury. But this argument ignores the effect of the false testimony. Albert's testimony was not necessary to establish the defense that no rape occurred, but once he testified that he was not present and had not then met Wilson, the truth of that testimony became central to his defense. The jury could find that Albert was lying, and could conclude that the reason he was lying was that he had raped Wilson.

The importance of Albert's false testimony was not lost on the State. In the State's final rebuttal argument, the prosecutor argued:

> "And finally, I ask you to scrutinize what the defendant told you in court today, because he testified-now, he didn't have to testify, he didn't have to present any evidence, but he chose to do so, because that's his right to do that if he wants to, and what did he tell you he was doing on October the 7th, 1985, or October the 6th, 1985? What-who did he tell you he was with? He didn't. Did you notice that? He says he didn't do anything to Sharlene Wilson, but he doesn't tell you what he was

doing. Well, who was he with? Where was he? Let me suggest to you there's a good reason why the defendant didn't tell you what he was doing and who he was with, because on October the 6th and October the 7th, he was with Kevin Johnson, and he was raping Sharlene Wilson, and that's why he can't tell you what he was doing that night."

It is not at all unlikely that the jury responded to this argument.

Albert has maintained from the time of his sentencing that his attorney told him to lie. If that were the case, the attorney's ineffective assistance would have been prejudicial because it would have been the cause of the false testimony that the jury probably held against Albert. The state post-conviction court found after a hearing, however, that Albert had not carried his burden of proof on that point. That finding is supported by the record and we presume it to be correct. *See* 28 U.S.C. § 2254(d)(8) (1995).[2] We therefore are left with the alternative presented at Albert's state postconviction hearing: that he told his attorney that he was at his girlfriend's or his grandmother's house.

It is clear from the state court's findings, however, that attorney Haslett never interviewed Albert's girl friend, nor did he interview Albert's grandmother. Nor does it appear that, during the minimal consultation between Haslett and Albert, Haslett tried to inquire about any other possible sources of corroboration for Albert's story. Nor did he attempt any investigation of such sources. If Albert's alibi was corroborated, the corroboration could have been presented to the jury. From what we know now, of course, the far greater likelihood is that investigation would

---

2. While this appeal was pending, 18 U.S.C. § 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996). This particular amendment has no specified effective date. During the months since the Act was passed, however, the State has made no attempt to urge the application of the new provision, and we consider the issue waived. *See Emerson v. Gramley,* 91 F.3d 898, 900 (7th Cir.1996), *cert. denied,* —— U.S. ——, ——, 117 S.Ct. 1260, 1289, 137 L.Ed.2d 339, 364 (1997). We note, however, that our en banc court has issued an order holding that the amendments in question "do not

apply to cases filed in federal courts of this Circuit prior to the Act's effective date of April 24, 1996." *Jeffries v. Wood,* 103 F.3d 827 (9th Cir. 1996) (order) (en banc). We further note that the Supreme Court has granted certiorari to consider the question of retroactivity of these amendments. *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997) (granting certiorari to review Seventh Circuit's holding that amendments in question are retroactive, *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc)). In light of our conclusion that the issue is waived, we need not rely upon or await further developments in these cases.

have led only to blind alleys or outright contradiction, sufficient to establish that Albert likely was not telling the truth when he said he was not present. Armed with such information, especially after Wilson's identification of Albert, Haslett could have confronted Albert with the difficulties of his story. With Haslett's encouragement, Albert could have elected to follow one of two strategies. Albert could have testified that he was present but that no rape occurred; this strategy was followed later by Kevin, who was acquitted. *See Harris By and Through Ramseyer v. Wood,* 64 F.3d 1432, 1436 (9th Cir.1995) (holding that acquittal of codefendant who used a non-deficient trial strategy is relevant to determining whether the defendant was prejudiced by his counsel's use of a different and objectively-deficient trial strategy); *see also Mak v. Blodgett,* 970 F.2d 614, 621 (9th Cir.1992) (holding that the outcome of a criminal proceeding against a codefendant is relevant to a *Strickland* analysis). Alternatively, Albert could have elected not to testify, thereby depriving the jury of the adverse credibility determination that probably tipped the balance against him. Because we have concluded that the State's case was so weak that in the absence of Albert's false testimony the jury probably would not have convicted, Haslett's performance prejudiced Albert.

We do not find it anomalous that an attorney who fulfills his or her duty to investigate the facts of a case may discover and need to act upon information contrary to that which the client has furnished. As the facts were found by the state courts, Albert offered Haslett an uncorroborated denial that, in light of evidence that minimal investigation would have revealed, was utterly unconvincing. Haslett was not entitled to stop there, but for all practical purposes, he did. If Haslett had talked to Albert's grandmother and his girl friend, in search of corroboration for Albert's alibi, and they had told him the truth, he would have found none. Had he confronted Albert with the lack of corroboration for his alibi, and the strength of the defense that no sexual intercourse had occurred, Albert probably would have elected not to lie to the jury. The prejudice from failing to investigate the alibi and confer more fully with Albert is not avoided by the fact that Albert misinformed his attorney.

## CONCLUSION

We conclude that, in the context of the entire record, the effect of Haslett's objectively deficient trial performance was "sufficient to undermine confidence in the outcome" of Albert's trial. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Albert's Sixth Amendment right to counsel accordingly was violated, and his conviction cannot stand. We therefore reverse the decision of the district court and remand with instructions that the district court issue the writ unless, within a reasonable time, the State proceeds to retry Albert Johnson.

**REVERSED and REMANDED with instructions.**

RYMER, Circuit Judge, dissenting:

I cannot agree that a defendant whose lie didn't work has been prejudiced, and I don't believe Albert's lie was central to his defense, which was that Wilson's story was preposterous. I would therefore affirm.