Jackie G. WILSON, Petitioner–
Appellant,

v.

I.C. Haunani HENRY, Warden,
Respondent–Appellee.

No. 98–16301.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1999.

Decided July 28, 1999.

Nedra Ruiz, Serra, Lichter, Daar, Bustamante & Michael, San Francisco, California, for petitioner-appellant.

Matthew P. Boyle, Deputy Attorney General, San Francisco, California, for respondent-appellee.

Before: T.G. NELSON, HAWKINS, and GRABER, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Jackie G. Wilson ("Wilson"), a California prisoner convicted of first-degree murder, attempted murder, and assault with a deadly weapon, appeals from the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We affirm the district court's denial of the writ.

Wilson, also known as "Jack Frost," shot and killed Michael "Green–Eyes" Henry ("Henry") and attempted to shoot Mario "BeBop" Baines ("Baines") early one Thanksgiving morning near the intersection of Fitzgerald and Jennings Streets in a San Francisco neighborhood, known as "Double Rock," which is notorious for drug use. Wilson supported his "imperfect self-defense" defense, and the prosecution its theory that Wilson had been seeking revenge on Baines, with evidence that he had been beaten the previous day by Baines and Fred Tobie ("Tobie").

Wilson raises six claims of ineffective assistance by trial counsel La Rue Grim ("Grim"), who had represented him in previous matters. According to Wilson, Grim

met with him for about an hour before trial and spoke with him for fifteen minutes each day of trial. Grim informed Wilson that he would be asked about his prior convictions, but did not review them with him. While in jail awaiting trial, Wilson told Grim that Jacqueline James ("James") had seen Henry in her home near the site of the shooting immediately before the shooting, with a shotgun under his coat. Grim did not call James as a witness and, following trial, did not move for a new trial based on James' written declaration.

## STANDARD OF REVIEW

Because Wilson's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA's provisions apply. *See Jeffries v. Wood,* 103 F.3d 827 (9th Cir.1996) (en banc). Pre–AEDPA, a claim of ineffective assistance of counsel was a mixed question of law and fact, which we reviewed de novo. *See Johnson v. Baldwin,* 114 F.3d 835, 838 (9th Cir. 1997). Under the AEDPA, habeas relief can be granted only when the state court adjudication of the merits of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In dictum, this court has noted that mixed questions of law and fact fall under the "unreasonable application" test of the first section of the statute. *See Moore v. Calderon,* 108 F.3d 261, 265 n. 3 (9th Cir. 1997). This court has not yet set out a clear delineation of how to conduct § 2254(d) review. *See Davis v. Kramer,* 167 F.3d 494, 500 (9th Cir.1999). We have stated that the "unreasonable application" and "contrary to" tests "reflect the same general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the

law as explicated by the Supreme Court." *Id.* We need not resolve the issue to decide this case, however.

## ANALYSIS

■ The *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), framework for analyzing ineffective assistance of counsel claims is considered in this circuit to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *Canales v. Roe,* 151 F.3d 1226, 1229 n. 2 (9th Cir.1998). Under *Strickland,* we evaluate (1) whether counsel's conduct, seen objectively, was out of "the wide range of professionally competent assistance" and, if so, (2) whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 691, 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* We must strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance, *see id.* at 689, 104 S.Ct. 2052, but need not decide whether counsel's performance was deficient before determining whether any prejudice was suffered by the defendant because of the alleged errors. *See id.* at 697, 104 S.Ct. 2052.

■ A *Strickland* analysis focuses not only on "outcome determination," but also on "whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372, 113 S.Ct. 838.

### A. Failure to investigate.

*Strickland* states that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," 466

U.S. at 691, 104 S.Ct. 2052, but that reasonableness is "substantially influenced" by the defendant's statements and actions. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*

■ Wilson argues that his trial counsel's apparent failure to investigate the circumstances of the shooting was not a reasonable tactical evaluation, but an absolute failure to provide a defense. Wilson points in particular to the James statement which, he contends, shows that counsel could have obtained and used eyewitness testimony to strengthen his defense, and to counsel's failure to investigate the size of the local storm drains to corroborate his testimony that he had disposed of his gun in one.

In *Johnson v. Baldwin,* 114 F.3d 835 (9th Cir.1997), counsel's failure to do even "minimal investigation"—failing to interview alibi witnesses, inquire into corroboration, or investigate corroboration—did create prejudice under *Strickland.* In *Johnson,* however, the state's case was so weak that even minimal investigation could have led to a trial strategy that would have prevented the jury from deciding to convict. *See id.* at 840.

Assuming that trial counsel's apparent failure to conduct any investigation into witnesses or corroborating evidence here was a breach of his duties, it does not appear that the prejudice prong of the *Strickland* analysis is met. Unlike in *Johnson,* the state's case against Wilson was strong. Wilson admitted to the shooting. No person on the street, including Wilson, testified that Henry had a weapon, nor did Wilson state that he knew Henry habitually carried a weapon or had other reason to fear him at the time of the shooting. All of this undermined Wilson's self-defense claims.

James would have contributed little but confusion to Wilson's defense. She not only places events two hours earlier than all other witnesses, she also claims that she saw the shooting take place immediately after Henry left her home, a block away. This contradicts the testimony by Baines and Ronald Ferguson that Henry had been in their company, smoking crack, until the three of them left the alley to speak to Wilson. James also says she heard four shots; all others testified that there were but two.

The James statement is simply too flawed to establish that a lack of investigation prejudiced Wilson. Wilson testified he saw no weapon, no weapon was found, and there was no testimony that he knew, or even thought, that Henry was usually armed. In light of these other facts, it is unlikely that any amount of investigation would have uncovered anyone who would have corroborated or otherwise supported Wilson's defense.[1] Even if counsel's decision not to undertake minimal investigation was out of "the wide range of professionally competent assistance," no prejudice accrued to Wilson. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

A police inspector testified, contradicting Wilson, that the storm drain openings in the area were too small for Wilson to dispose of the weapon as he testified. Wilson argues that investigation would have shown that the drains were large enough and that his counsel's failure to investigate to corroborate him was prejudicial. However, disposal of the gun, which Wilson admitted using, does not bear on any element of the crimes of which he was convicted. Although *Johnson* suggests that an attorney has a duty to investigate to enable the client to present a "more convincing defense" when the client's account of facts is unconvincing, *see Johnson,* 114 F.3d at 835, it does not appear that counsel

---

1. Also, because Wilson had been in Texas and elsewhere for three months before he was extradited and charged, the passage of time also makes it less likely that any investigation would have been helpful.

should have seen Wilson's statement that he threw the gun into a drain as triggering this duty. Although corroborating Wilson's testimony might have been a better choice of tactic, choosing not to investigate the drains' size was not outside the range of reasonable trial decisions. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.[2]

### B. Failure to consult an expert in drug addiction and psychiatric trauma.

■ Wilson also argues that his trial counsel prejudicially erred by failing to consult a psychiatric expert. Insofar as such an expert would have testified, without examining Wilson, that it would be reasonable to act out of fear in a neighborhood rife with violence-prone crack addicts, such a general opinion is inadmissible under California Penal Code § 289(a), because it would not concern whether Wilson had "actually formed" the required specific intent. To the extent that the nature of the neighborhood was relevant, a mere description of the events leading up to the shooting would suffice. Counsel's decision not to engage an expert for this reason did not prejudice Wilson.

Insofar as Wilson argues that such an expert should have been engaged to examine him to support a defense that his mental state precluded intent, it is not clear that counsel had reason to believe that such a defense would have been warranted. Although counsel was aware that Wilson had been beaten the day before the shooting, that fact alone does not raise the possibility of a strong mental state defense. A decision not to pursue testimony by a psychiatric expert, when no mental state defense seems likely, is not unreasonable under *Strickland. See Williams v. Calderon,* 52 F.3d 1465, 1471 (9th Cir. 1995) (holding that there was no ineffective assistance from failure to hire psychiatrist

where there was no evidence that defendant not sane).

### C. Failure to move to exclude or limit reference to prior convictions.

■ Wilson argues that he was prejudiced by trial counsel's failure to move to exclude or limit reference to prior convictions and uncharged acts (heroin dealing) used to impeach him. To show prejudice under *Strickland* from failure to file a motion, Wilson must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him. *See Kimmelman v. Morrison,* 477 U.S. 365, 373–74, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (so stating with respect to failure to file a motion to suppress on Fourth Amendment grounds).

Wilson's convictions, assessed under California's *Beagle* factors for admissibility, *see People v. Beagle,* 6 Cal.3d 441, 99 Cal.Rptr. 313, 492 P.2d 1, 8 (1972); *People v. Castro,* 38 Cal.3d 301, 211 Cal.Rptr. 719, 696 P.2d 111 (1985), seem almost certainly admissible: all of Wilson's prior convictions were for crimes of moral turpitude, such as dealing drugs; none were so remote in time as to be inadmissible; they could not be excluded on the basis of similarity to current charges; and the admission of the convictions did not, in fact, affect his decision to testify. Wilson's uncharged conduct—dealing heroin for at least ten years—was also highly probative to the prosecution's attempt to rebut his defense that he was a helpless victim of drug addicts and, accordingly, was almost certainly admissible. *See People v. Hawkins,* 10 Cal.4th 920, 42 Cal.Rptr.2d 636, 897 P.2d 574, 590–91 (1995). Thus it is not reasonable to believe that the court would have granted a motion to exclude.[3]

---

**2.** It is well to keep in mind that trial counsel had represented Wilson in the past and presumably was familiar with the geography and environment in the Double Rock neighborhood.

**3.** Also, although no motion is in the record, as the district court concluded after noting references to discussions in chambers, it does seem that trial counsel raised the issue and the court decided to admit evidence of the

■ Wilson's further argument, that trial counsel rendered ineffective assistance by failing to focus on his client's criminal history during voir dire to discover potential juror prejudice and determine whether jurors could follow limiting instructions on such a history, also fails. The Supreme Court has stated that jurors are required only to "lay aside ... impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). At voir dire, all jurors stated that they would be fair and would follow the law as instructed. Counsel's choice to rely on such a commitment, without emphasizing his client's criminal history, merits deference as a tactical decision. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Wilson also claims prejudice from counsel's failure to challenge juror Zwerdling. Because California law prohibits felons from carrying arms, Zwerdling's statement that he believed that felons should be barred from possessing arms was not so inherently prejudicial that trial counsel's decision to accept him can be deemed ineffective assistance of counsel. *Cf. United States v. Quintero–Barraza,* 78 F.3d 1344, 1349–50 (9th Cir.1995) (holding that it was not ineffective assistance to seat a juror who stated a belief that persons on trial are guilty until proved innocent).

### D. Failure to prepare Wilson for cross-examination.

■ Wilson contends that trial counsel rendered ineffective assistance by preparing him inadequately for cross-examination. If trial counsel did err by not preparing him further, Wilson was not prejudiced by the inconsistencies in his testimony on cross-examination to such an extent that the fairness of the trial is a concern. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. The case against

prior convictions. This fact weighs against the likelihood that the motion, if made for-

him was strong, and the inconsistencies on which he relies do not go to any element of the charges against him, or to his account of the events related to the shooting.

### E. Failure to prevent jury from learning Wilson was in custody.

■ The jury learned that Wilson was in pre-trial custody when Wilson testified to a conversation that he had had while in jail, in order to impeach an also incarcerated prosecution witness who (Wilson claimed) had ordered the beating by Baines and Tobie. Trial counsel's decision to allow the jury to learn that Wilson was in custody, in order to explain plausibly why he was speaking to a person he claimed to fear, was a reasonable tactical choice. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

### F. Failure to move for new trial or to quash indictment.

■ A motion for a new trial, based on the James declaration, would have been to no avail. Because Wilson admits that he and his attorney knew of the James declaration before the end of the trial, it was not newly discovered evidence that could support a motion for a new trial under California Penal Code § 1181(8). And, because the motion almost certainly would have failed, Wilson has not demonstrated that he was prejudiced by counsel's refusal to make it. *See Kimmelman,* 477 U.S. at 373–74, 106 S.Ct. 2574. (The grand jury was not required to find premeditation to indict Wilson on a murder charge, and he could be charged with and convicted of first degree murder even if the indictment did not specify a degree). *See Cummiskey v. Superior Court of Sacramento County,* 3 Cal.4th 1018, 13 Cal.Rptr.2d 551, 839 P.2d 1059, 1069 (1992)) (holding that a grand jury does not have the duty of determining a degree of murder; that task is

mally, would have been granted.

for the trial jury (quoting *People v. Nichol,* 34 Cal. 211, 217 (1867), *disapproved on other grounds by People v. Gorshen,* 51 Cal.2d 716, 336 P.2d 492 (1952))). Thus, although the grand jury may have indicted Wilson without considering premeditation, this is not grounds to quash the indictment. *See also Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (refusing to dismiss an indictment for errors in federal grand jury proceedings, in absence of a showing of prejudice).

Also, Baines, who was involved in the fight, told the Grand Jury about the beating of Wilson. Further testimony on this point was not necessary to fulfill the prosecution's obligation under state statute to present evidence tending to negate guilt. *See Cummiskey,* 13 Cal.Rptr.2d 551, 839 P.2d at 1068–69; *see also United States v. Williams,* 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (holding there was no constitutional duty to disclose exculpatory evidence to federal grand jury).

Because the motion almost certainly would have been denied, no prejudice accrued to Wilson from his counsel's failure to make a motion on these grounds. *See Kimmelman,* 477 U.S. at 373–74, 106 S.Ct. 2574.

AFFIRMED.