**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Pablo CERVANTES, Defendant—**
**Appellant.**

No. 00–16192.
D.C. Nos. CV–99–06615–MDC,
CR–95–05030–MDC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 2002.

Decided July 17, 2002.

---

3. Hollman's motion to late-file his Appellee's Brief is denied.

Before SCHROEDER, Chief Judge, D.W. NELSON, and REINHARDT, Circuit Judges.

### MEMORANDUM *

Pablo Cervantes appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his conviction and sentence. Cervantes was convicted of conspiring to manufacture and distribute methamphetamine, manufacturing methamphetamine, possessing methamphetamine with the intent to distribute it, and aiding and abetting the manufacture of methamphetamine in violation of 21 U.S.C. §§ 846, 841(A)(1) and 18 U.S.C. § 2, and sentenced to 262 months in prison and 60 months of supervised release. Cervantes alleges that (1) his counsel was constitutionally ineffective because he failed to investigate a potentially meritorious misidentification defense; (2) his counsel was constitutionally ineffective because of a conflict of interest; and (3) his constitutional right to testify on his own behalf was infringed when his counsel did not permit him to take the stand. The district court denied Cervantes's § 2255 motion without a hearing and Cervantes now appeals that decision. We affirm the

district court's dismissal of Cervantes's claim regarding his right to testify, reverse its denial of his two ineffective assistance of counsel claims, and remand for an evidentiary hearing.

Under 28 U.S.C. § 2255, a federal prisoner may file a motion asking the district court to vacate, set aside, or correct his sentence. The district court "shall ... grant a prompt [evidentiary] hearing" when it receives such a motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* An evidentiary hearing is "usually required if the motion states a claim based on matters outside the record or events outside the courtroom." *United States v. Burrows,* 872 F.2d 915, 917 (9th Cir.1989). The district court may deny a § 2255 motion without an evidentiary hearing "only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Id.; Watts v. United States,* 841 F.2d 275, 277 (9th Cir.1987). We will analyze each of Cervantes's three claims to determine whether the district court abused its discretion when it dismissed his claims without granting him an evidentiary hearing.[1]

### A. Ineffective Assistance of Counsel for Failure to Investigate

■ In order to prevail on an ineffective assistance of counsel claim, Cervantes must demonstrate (1) that the performance of his counsel fell below an objective standard of reasonableness, and (2) that "there is a reasonable probability

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. We review *de novo* the district court's denial of Cervantes's § 2255 motion. *United States v. Christakis,* 238 F.3d 1164 (9th Cir.2001).

Factual findings that the district court made in deciding the § 2255 motion are reviewed for clear error, *id.;* however, we review the district court's decision to deny an evidentiary hearing under an abuse of discretion standard, *United States v. Chacon–Palomares,* 208 F.3d 1157, 1158–59 (9th Cir.2000).

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We have held that, to be deemed competent, a defense attorney must, "at a minimum, *conduct a reasonable investigation* enabling him to make informed decisions about how best to represent his client." *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.1994) (emphasis in original); *see also Jennings v. Woodford*, 290 F.3d 1006, 1011(9th Cir. 2002); *Johnson v. Baldwin*, 114 F.3d 835, 840 (9th Cir.1997). Thus, an attorney's performance is constitutionally and unreasonably deficient when he "neither conduct[s] a reasonable investigation nor ma[kes] a showing of strategic reasons for failing to do so." *Sanders*, 21 F.3d at 1456; *see also Phillips v. Woodford*, 267 F.3d 966, 980 (9th Cir.2001) (holding that an attorney's performance was deficient because he failed to investigate and "reasonably select the [ ] defense used at trial"); *Harris v. Wood*, 64 F.3d 1432, 1435–36 (9th Cir.1995) (citing as deficiencies counsel's failure to retain an investigator and counsel's failure to interview 29 of the 32 people identified in the police reports). The error is especially egregious when a defense attorney fails to investigate an actual innocence claim or fails to consider potentially exculpatory evidence. *See Lord v. Wood*, 184 F.3d 1083, 1093 (9th Cir.1999) ("A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance.").

■ Here, Reyes submitted an affidavit stating that he did not investigate Cervantes's contention that it was his cousin, not he, who was driving the white Mustang at the time that it was followed by the Bureau of Narcotics Enforcement agents and who was observed by those agents engaging in suspicious counter-surveillance maneuvers. Rather, Reyes relied at trial solely on an "insufficiency of the evidence" defense and did not consider pursuing a "misidentification" defense. The district court abused its discretion when it denied Cervantes's request for an evidentiary hearing and characterized Reyes's failure to investigate the misidentification defense as a "tactical decision" grounded in Reyes's determination to rely on a lack of evidence theory. Misidentification and insufficiency of the evidence are *complementary* defenses rather than *conflicting* defenses. There is no tactical reason to fail to investigate one while pursuing the other. Moreover, without having spoken to Cervantes's cousin or in any way having investigated his possible involvement in the case, Reyes had insufficient facts on which to base any decision as to the appropriate defense or defenses to be offered. Reyes himself admitted that there was "no reason" why he should not have investigated Cervantes's assertion. Thus, by his own admission, his was not a tactical decision.

When evaluating whether Cervantes was unfairly prejudiced by Reyes's deficient performance, we must analyze Reyes's failure to investigate "in light of the strength of the government's case," *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir.1986), and ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694; *see also Johnson*, 114 F.3d at 838 ("The State's case was thus weak. The potential prejudicial effect of counsel's deficient performance must be evaluated in light of that fact."). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 366 U.S. at 695.

Here, the government's case against Cervantes was entirely circumstantial. Cervantes was never seen entering the residence or the laboratory at the Del Rey Avenue property, and there were no traces of methamphetamine on his person or in the red Cavalier he was driving at the time he was arrested. The evidence against Cervantes is in sharp contrast with the evidence against his co-defendants, both of whom were acquitted. Both of the co-defendants were passengers in a yellow Toyota when it left the Del Rey Avenue property after having been parked there overnight. When the Toyota was stopped shortly afterwards, traces of methamphetamine were found on each of the co-defendants and a gun and package of drugs were found in the vehicle. Although the circumstantial evidence linking Cervantes to the Del Rey laboratory was inculpatory, it was far from overwhelming. Further, the fact that three of the individuals in the Toyota possessed Cervantes's phone number shows little more than that they were his friends or acquaintances. *See United States v. Garcia* 151 F.3d 1243, 1246 (9th Cir.1998) ("There can be no conviction for guilt by association."). Similarly, that Cardenas was found with money orders addressed to the individuals being held in jail, including Cervantes, is hardly dispositive. Moreover, if Cervantes's contentions about his cousin are true, it is quite understandable that Cervantes's wallet and personal belongings were found in the Mustang that he had lent to his cousin a few days before his arrest. With respect to the Bureau of Narcotics Enforcement agents' identification of Cervantes as the driver of the Mustang, the identifications are hardly incontrovertible given that the agents conducted their surveillance from 100 feet away (and sometimes more) so as to avoid being detected.

Whether Cervantes was prejudiced by his counsel's deficient performance depends not only on the strength of the government's case against him but also on the strength of the misidentification evidence that could have been presented to the jury had Reyes investigated the cousin's involvement. In this case, Cervantes was not the only witness who would have testified that his cousin was the driver of the Mustang. Rafael Valencia, the cousin's own brother, submitted an affidavit stating that he saw his brother driving the Mustang in the days preceding Cervantes's arrest. Additionally, there are photographs in the record that reveal a striking resemblance between Cervantes and his cousin. One could not tell from the photographs that there is a substantial age difference between the two individuals. It is more than possible that one could confuse them, particularly from a distance of 100 feet or more.

Cervantes is entitled to the opportunity, at an evidentiary hearing, to develop facts to support his claim of prejudice. His claim regarding the failure to investigate is certainly not "so palpably incredible or patently frivolous as to warrant summary dismissal," *Burrows,* 872 F.2d at 917, and the district court abused its discretion in concluding otherwise.

## B. Ineffective Assistance of Counsel on the Basis of a Conflict of Interest

In order to prevail on a conflict of interest claim, a defendant must show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *see also Mickens v. Taylor,* —— U.S. ——, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). In a case such as this one, involving the successive representation of clients, a conflict of interest may exist if the two clients' cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loy-

alty. *United States v. Wheat*, 813 F.2d 1399, 1402 & n. 1 (9th Cir.1987).

█ If it is true, as Cervantes alleges, that Reyes was representing Cervantes's cousin in a drug-related case approximately six months before Cervantes was arrested, Reyes easily could have learned confidential information that would have given rise to a conflict of interest in this case. He could also have acted or refrained from acting in Cervantes's case because of his loyalty to his cousin. For example, he could have failed to investigate the cousin's involvement in this case for that reason. Because this issue involves facts *de hors* the record, it is a matter that should properly be explored during an evidentiary hearing. *See Burrows*, 872 F.2d at 917 (explaining that an evidentiary hearing is "usually required" to decide the merits of a § 2255 motion that depends on facts outside the record). Although there may not be as many facts in the record as there are regarding the failure to investigate claim, the conflict of interest claim is not "patently frivolous" or so obviously without merit as to justify dismissal without an evidentiary hearing. *See id.*[2]

## C. Right to Testify

█ A defendant in a criminal case has a constitutional right, grounded in the Fourteenth Amendment Due Process Clause, the Sixth Amendment Compulsory Process Clause, and the Fifth Amendment's guarantee against compelled testimony, to take the witness stand and testify in his own defense. *See Rock v. Arkansas*, 483 U.S. 44, 49–52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Greene v. Lambert*, 288 F.3d 1081 (9th Cir.2002). However, "[w]hen a defendant remains 'silent in the face of his attorney's decision not to call him as a witness,' he waives the right to testify." *United States v. Pino–Noriega*, 189 F.3d 1089, 1095 (9th Cir.1999) (quoting *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir.1993)). Because Cervantes did not insist on testifying, speak to the court about his desire to testify, or attempt to discharge Reyes as his attorney, he waived his right to testify and may not raise it here. Therefore, the district court's decision to deny this claim without an evidentiary hearing was appropriate.

## D. Conclusion

We affirm the district court's dismissal of Cervantes's claim regarding the denial of his right to testify, reverse its dismissal of Cervantes's two claims of ineffective assistance, and remand the ineffective assistance of counsel claims for further factual development in an evidentiary hearing. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

---

**2.** The government argues that the district court was justified in deciding that Cervantes's statement about the prior representation of his cousin was not credible and thus that no evidentiary hearing was necessary, because the statement conflicted with both Reyes's affidavit and the "Claim Opposing Forfeiture" document showing that the cousin was represented by another attorney. However, as Cervantes points out, the government incorrectly represents the contents of Reyes's affidavit. Reyes's affidavit does not conflict with Cervantes's statement: Reyes did not discuss his representation of the cousin in the affidavit. Additionally, the "Claim Opposing Forfeiture" document merely shows that someone other than Reyes represented the cousin in a forfeiture matter that arose out of his criminal case. Evidence that the cousin employed a different lawyer for a forfeiture case than for the criminal proceeding, as Cervantes points out, does not conflict with Cervantes's and Rafael Valencia's statements that Reyes represented the cousin.