**Danny Alfredo AGUIRRE,
Petitioner—Appellant,**

v.

**Edward S. ALAMEIDA, Jr., Director,
Respondent—Appellee.**

**No. 03–56795.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2004.

Decided Jan. 27, 2005.

Conrad Petermann, Esq., Law Offices of Conrad Petermann, Ojai, CA, for Petitioner–Appellant.

Juliet H. Swoboda, Esq., Office of the California Attorney General, Los Angeles, CA, for Respondent–Appellee.

Before: REINHARDT, BEEZER, and WARDLAW, Circuit Judges.

MEMORANDUM [*]

Danny Alfredo Aguirre appeals the district court's denial of his petition for writ of habeas corpus, which alleges ineffective assistance of counsel in his state trial court proceeding.  We have jurisdiction pursuant to 28 U.S.C. § 2253, and, reversing the district court's judgment, we grant the petition.

The failure of Aguirre's counsel to investigate a post-traumatic stress disorder ("PTSD") defense was conduct that "falls

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Aguirre contends that expert testimony explaining his PTSD would have bolstered his version of events: namely, that he pulled out his knife for self protection, and not to commit a robbery. Nevertheless, Aguirre's counsel failed to secure an expert to examine Aguirre for PTSD and to explain to the jury how such a disorder may have affected Aguirre when Parra turned to confront him. Aguirre's counsel does not assert that this omission was a tactical decision. Rather, counsel's declaration merely states that he believed that the evidence of prior attacks on Aguirre sufficiently raised the issue. Furthermore, Aguirre's counsel failed to investigate the PTSD defense, and thus was unable to make a fully informed decision against introducing evidence of his mental state, which would have negated the element of intent to commit robbery.

"[T]here is a reasonable probability that," but for Aguirre's counsel's failure to investigate the PTSD defense, "the result of the proceeding ... would have been different." *Jennings v. Woodford*, 290 F.3d 1006 (9th Cir.2002). Psychiatric and medical testimony could have enabled trial counsel to identify appellant's PTSD as an explanation for why Aguirre perceived Parra as a threat and believed that he needed to defend himself. Without such testimony, the jury was left with no explanation apart from counsel's bare assertion that Parra may have been lying about the entire incident. Respondent contends that Aguirre's counsel's failure to investigate a PTSD defense did not cause prejudice because "without testimony by Aguirre on this topic, other evidence would have been of little use." In fact, Aguirre wanted to testify in his own defense, and refrained from doing so only upon the advice of his counsel. Had counsel pursued the PTSD defense, he would likely have decided to advise Aguirre to testify and to explain the nature of the misunderstanding between himself and Parra. The threat of bringing out Aguirre's prior conviction was hardly overwhelming, given the trivial nature of the earlier offense. Moreover, a concern about the theft of a carton of beer was not cited by counsel as the reason for failing to pursue the PTSD defense.

In holding that Aguirre's counsel was constitutionally effective, the state court unreasonably applied the *Strickland* test.[1] We therefore reverse the district court and remand with the instruction that the district court grant the petition and order Aguirre released on bail pending the state's decision to retry him. The state shall have thirty days from the date of the issuance of this mandate in which to decide

1. The dissent misses the point. Aguirre does not claim that evidence regarding his PTSD would have provided an affirmative mental state defense. Rather, Aguirre asserts that the PTSD evidence his counsel failed to unearth would have offered an innocent explanation of the incident in question. In other words, if this evidence had been offered, it would have provided strong support for the defendant's account of the events as a tragic misunderstanding on the part of both participants: that Aguirre, suffering from PTSD, felt threatened by Parra when Parra suddenly turned around to confront him on the street, and Parra, who was carrying a large amount of cash on him, thought Aguirre was trying to rob him when he mistakenly believed that Aguirre was following him. Had evidence of PTSD been presented to support Aguirre's account of the encounter, it is reasonably likely that the jury's verdict would have been different. Moreover, the dissent's discussion of what Aguirre's trial lawyer actually did is irrelevant; the lawyer refused to investigate Aguirre's PTSD evidence, which the court had said it would consider admitting if counsel demonstrated relevance. This was not a tactical decision, but rather an inexcusable failure to investigate and present critical evidence.

whether to retry this case. We order that this mandate issue immediately. REVERSED AND REMANDED.

BEEZER, Circuit Judge, dissenting.

I am unable to join the opinion of the court. Aguirre took a calculated risk at trial and did not testify, instead arguing that the prosecution had not proven its case. He lost. Armed now with the perfect vision of hindsight, Aguirre seeks habeas relief in order to try a different strategy. I fail to see how habeas relief is proper under these circumstances. The decision by the California courts to deny Aguirre's habeas petition did not constitute an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## I

Aguirre was convicted in state court of attempted second degree robbery with a knife. The state presented evidence that Aguirre attempted to rob Gonzalo Parra shortly after midnight on January 8, 2000. Parra testified that Aguirre followed him as Parra left a bar, brandished a knife and demanded his wallet. Cross-examination by Aguirre's trial counsel did not yield any revelations significantly discrediting Parra's testimony. Police officers testified that they apprehended Aguirre near the scene of the incident, hiding behind a planter. They found his knife in nearby bushes. Aguirre did not testify to refute these events, presumably because of a concern that the jury would then learn that he had a prior conviction for attempted robbery.

Before trial, Aguirre's counsel was aware that Aguirre had been a victim of a shooting and a stabbing in two separate incidents a number of years before the alleged attempted robbery. Aguirre's counsel originally planned to introduce medical records of these prior injuries as a means of explaining why Aguirre may have feared for his safety on the night of the alleged attempted robbery. The trial court made a preliminary ruling that the evidence was not admissible because counsel had not demonstrated its relevance or how it planned to authenticate the records. The prosecution also threatened to introduce evidence of Aguirre's prior attempted robbery conviction if Aguirre argued this theory. Trial counsel ultimately did not present this evidence. But trial counsel diligently cross examined the state's witnesses and introduced witnesses on Aguirre's behalf. Counsel's closing argument emphasized reasonable doubt based on a lack of motive and credibility of the state witnesses, a strategy that was not improper given that the only person able to refute Parra's version of events was defendant Aguirre, a convicted felon.

In his most recent state habeas petition, Aguirre laid out his theory of events: around midnight, he was on his way to get something to eat. Parra, who was walking in front of him, suddenly whistled, which Aguirre interpreted as an attempt by Parra to call his friends. Aguirre, a veteran of street violence that allegedly gave rise to Post Traumatic Stress Disorder ("PTSD"), was afraid Parra was going to attack him. There was a verbal confrontation and Aguirre pulled out a knife. Parra laughed and said he was going to call the police. Aguirre hid.

## II

Under AEDPA, we may only grant habeas relief to a state prisoner if the state court's adjudication was contrary to, or an unreasonable application of, clearly established law as determined by the Supreme Court. *See Gill v. Ayers*, 342 F.3d 911,

917 (9th Cir.2003).[1] The Supreme Court has held that *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is "clearly established federal law" for purposes of AEDPA. *Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An ineffective assistance of counsel claim under *Strickland* requires that counsel's performance fall below an objective standard of reasonableness and result in prejudice to the defendant. *Strickland,* 466 U.S. at 688, 692, 104 S.Ct. 2052.

Under this framework, I am not able to accept the court's holding that, as a matter of clearly established federal law, Aguirre's counsel improperly failed to investigate a potential mental state defense. My disagreement with the opinion of the court is for two reasons. First, it was not unreasonable for trial counsel to strategically decide against pursuing a potential mental state defense. Second, the facts of this case do not demonstrate that, as a matter of clearly established federal law, defense counsel should even have reasonably been on notice of a potential mental state defense.

## A

Aguirre is essentially asking us to give him a second chance to argue his innocence, under a new strategic theory. He does not argue that, had counsel more diligently researched his case, a jury could have found Aguirre mentally incompetent. Nor can he make this argument because there is no indication that his alleged mental illness prevented Aguirre from forming the requisite intent necessary to commit this crime. Rather, as the opinion of the

court notes, Aguirre simply argues that an expert could have bolstered his version of events. According to the state court of appeals, California law does not allow an expert to independently establish whether Aguirre intended to rob Parra. *See* Cal.Penal Code § 29. On habeas review, we must "accept a state court ruling on questions of state law." *Moran v. McDaniel,* 80 F.3d 1261, 1268 (9th Cir.1996) (internal citation and quotation marks omitted). So to have any case at all, Aguirre was required to testify. Putting Aguirre on the stand would risk introduction of his previous record. A strategy that allows the jury to learn a defendant in an attempted robbery trial has a prior record for attempted robbery would raise red flags in the eyes of any defense attorney.

*Strickland* instructs that in reviewing an ineffective assistance of counsel claim, we must recognize the "wide latitude counsel must have in making tactical decisions" and, in reviewing the actions of counsel, we "must be highly deferential." 466 U.S. at 689, 104 S.Ct. 2052. It is not necessary for trial counsel to expressly state that he decided not to pursue a Post Traumatic Stress Disorder defense for strategic reasons. The test is whether the defendant can "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

It was quite reasonable for a defense attorney in this case not to pursue a mental state defense. Aguirre's counsel knew (1) that his client had a prior felony conviction for attempted robbery; (2) his client

---

1. Although no reasoned state court decision has addressed all of the arguments Aguirre raised before the California Supreme Court, that court's denial of habeas relief on the merits is still accorded deference under AED-

PA. *See Himes v. Thompson,* 336 F.3d 848, 853 (9th Cir.2003). We look to the record to determine if the state court's denial was an unreasonable application of clearly established federal law. *Id.*

had been a victim previously in street violence; and (3) any attempt to argue Aguirre's actions were influenced by the prior injuries would lead the prosecution to attempt to introduce Aguirre's prior record. Putting the jurors on notice that Aguirre had attempted to rob before would significantly undermine any defense that he lacked the intent to rob here. Given this scenario, it most definitely "might be considered sound trial strategy" to not pursue a theory requiring Aguirre to testify.

**B**

I also am unable to accept the court's opinion for a second reason. It is not even clearly established in our own Circuit—let alone the Supreme Court—that the law mandates an attorney in the position of Aguirre's trial counsel to have known that his client potentially suffered from a mental condition that required investigation.

Failure to investigate and present expert testimony of a psychiatric condition may constitute ineffective assistance of counsel. *See Jennings v. Woodford,* 290 F.3d 1006, 1019 (9th Cir.2002); *Seidel v. Merkle,* 146 F.3d 750, 755–56 (9th Cir. 1998); *Turner v. Duncan,* 158 F.3d 449, 456–57 (9th Cir.1998).[2] These cases involved instances where trial counsel was reasonably on notice of potential mental disorders affecting their clients. *See Woodford,* 290 F.3d at 1016; *Seidel,* 146 F.3d at 755–56; *Turner,* 158 F.3d at 457. In contrast, as we held in *Wilson v. Henry,* 185 F.3d 986 (9th Cir.1999), evidence of a prior physical attack suffered by the defendant does not automatically put counsel on notice of a potential mental state defense. *Id.* at 990 ("Although counsel was aware that [petitioner] had been beat-en the day before the shooting, that fact alone does not raise the possibility of a strong mental state defense."). In such a situation, a failure to pursue a medical expert is not unreasonable. *Id.*

Aguirre's case presents relevant facts similar to those in *Henry.* Both defendants had been victims of violent crimes. Trial counsel in both cases considered using prior incidents to explain the defendants' conduct during the alleged crimes. *See id.* at 987 (noting Wilson argued "imperfect self-defense" based on the assault). And trial counsel in both cases failed to obtain psychiatric examinations for their defenses.

As in *Henry,* and in contrast to the cases relied on by the opinion of the court, there is sparse indication in the record that Aguirre suffered from a mental disease, other than the fact of the prior assaults. Arguably, the signs of a mental state defense were stronger in *Henry:* the defendant was charged with attempting to shoot the person who had assaulted him the day before. *See id.* at 987.

"A decision not to pursue testimony by a psychiatric expert, when no mental state defense seems likely, is not unreasonable under *Strickland." Henry,* 185 F.3d at 990. *Henry's* continued good standing indicates that it is not even clear law in this Circuit that *Strickland* requires trial counsel to investigate mental state defenses every time a defendant has been a victim of violent crime in the past. AEDPA requires more before a federal court can hold a state court's adjudication resulted in a decision that was an objectively unreasonable application of clearly established federal law. *Cf. Clark v. Murphy,* 331 F.3d 1062, 1071 (9th Cir.2003) ("The very

---

**2.** "Although only Supreme Court law is binding on the states, [Ninth] Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable." *Himes v. Thompson,* 336 F.3d 848, 853 (9th Cir.2003).

fact that circuit courts have reached differing results on similar facts leads inevitably to the conclusion that the [state] court's rejection of [petitioner's] claim was not objectively unreasonable.").

## IV

I believe that the state's denial of Aguirre's habeas petition was not an unreasonable application of federal law.